UNITED STATES of America, Plaintiff-Appellant,

v.

I.I. OZAR; Larry J. Bridges; Sherman W. Dreiseszun, Defendants–Appellees.

No. 94–2740.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1994.

Decided April 7, 1995.

Rehearing Denied and Suggestion for Rehearing En Banc Denied May 25, 1995.

R. Stan Mortenson, Washington, DC, argued (Charles W. German and Brant M. Laue of Kansas City, MO, on the brief), for I.I. Ozar.

James L. Eisenbrandt, Overland Park, KS, on the brief, for Larry S. Bridges.

Robert J. Campbell, Kansas City, MO, and R. Stan Mortenson, Paul F. Enzinna and David R. Fontaine, Washington, DC, on the brief, for Sherman W. Dreiseszun.

Matt Jeffrey Whitworth, Kansas City, MO (Stephen L. Hill, Jr., Matt J. Whitworth, Marietta Parker and Kenneth E. Weinfurt, on the brief), for appellant.

Before BOWMAN and LOKEN, Circuit Judges, and BOGUE,* Senior District Judge.

LOKEN, Circuit Judge.

This is an interlocutory appeal in a bid-rigging prosecution in which the government proposes to introduce evidence obtained by electronic surveillance. The district court suppressed that evidence on three grounds: because the government violated *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), when it obtained an order authorizing electronic surveillance with an affidavit that contained reckless misstatements and omissions; because the probable cause determination was based upon stale information; and because the FBI did not minimize the surveillance as required by 18 U.S.C. § 2518(5). The government appeals. We reverse.

## I. Background.

In June 1991, the FBI had spent nearly two years investigating a suspected scheme to defraud two federally insured Kansas City financial institutions controlled by Frank S. Morgan and his associates. On June 5, Assistant United States Attorney Kurt Shernuk applied for an order permitting the FBI to conduct electronic surveillance of regularly held Saturday morning meetings in the conference room at M.D. Management, Incorporated, in Overland Park, Kansas. Frank Morgan and his uncle, Sherman W. Dreiseszun, were partners in M.D. Management. In support of this request, Shernuk submitted a forty-nine page affidavit by FBI Special Agent Keith Bryars. The affidavit related

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

information the FBI had obtained from two confidential informants; from a criminal referral by a federal bank regulatory agency, the Office of Thrift Supervision ("OTS"); from interviews with OTS examiners; and from the FBI's own investigation.

After reviewing the Bryars affidavit, Chief Judge Earl E. O'Connor of the United States District Court for the District of Kansas issued an order authorizing the requested electronic surveillance. The authorization order stated (i) that there was probable cause to believe that Morgan, Dreiseszun, I.I. Ozar, David Feingold, and Larry J. Bridges were committing bank fraud and were conspiring to commit bank fraud; (ii) that there was probable cause to believe that these suspects would discuss those offenses at the Saturday morning meetings to be monitored; and (iii) that electronic surveillance was necessary because normal investigative procedures appeared unlikely to succeed or too dangerous to employ. *See* 18 U.S.C. § 2518(3). Consistent with § 2518(5) and (6), the order limited the authorization to thirty days, required that monitoring be conducted so as to minimize the interception of innocent communications, and required that the government submit progress reports after ten, twenty, and thirty days of monitoring.

Surveillance began on June 8, 1991. The court periodically entered extension orders permitting surveillance beyond the initial thirty days. The August 20 extension order approved daily surveillance of the M.D. Management conference room. In addition, on September 27, Judge O'Connor approved wiretap surveillance of an expanded group of targets based upon a thirty-one page affidavit by FBI Special Agent Michael R. Gillispie. Judge O'Connor met with the FBI monitoring team and received progress reports each week during the surveillance. All surveillance ended December 12, 1991.

No bank fraud charges were filed as a result of this surveillance, but the government obtained Judge O'Connor's approval to use intercepted communications that related to offenses other than those specified in his authorization orders. *See* 18 U.S.C. § 2517(5). Then, on October 18, 1992, a federal grand jury indicted Morgan, who has

since died, Ozar, Dreiseszun, and Bridges for violating 18 U.S.C. §§ 371, 1001, and 1031 by conspiring to defraud the United States in bidding for government leases. Defendants moved to suppress all evidence obtained from the electronic surveillance authorized by Judge O'Connor. After a three week evidentiary hearing, the magistrate judge recommended suppressing the 325 hours of recorded conversations. The district court adopted the recommended findings and conclusions and granted defendants' motion to suppress. The government's interlocutory appeal of this issue is authorized by statute. *See* 18 U.S.C. §§ 2518(10)(b) and 3731.

## II. The *Franks v. Delaware* Issue.

The central issue on this appeal is the magistrate judge's recommended application of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667, a case in which the Supreme Court defined a limited exception to the presumptive validity of an affidavit supporting a search warrant application. Under *Franks v. Delaware,* if the government intentionally includes material false statements in its warrant affidavits, or includes material false statements with that reckless disregard for the truth that is the legal equivalent of intentional falsehood, a suppression court must "set aside those statements and then review the remaining portions of the affidavits to see if what remain[s is] sufficient to establish probable cause." *United States v. Garcia,* 785 F.2d 214, 222 (8th Cir.), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). Defendants bear the burden of proving the intentional or reckless inclusion of false statements in a warrant affidavit. *Id.* at 222.

Here, the magistrate judge concluded that there was "a disturbing pattern of misstatements, omissions and overstatements [in the Bryars affidavit] which ultimately undermine[d] the [FBI's] showing of probable cause." In our view, this conclusion is the product of fundamental errors of fact and law.

We begin by reviewing the showing of probable cause in the Bryars affidavit. The first paragraph of the "PROBABLE

CAUSE" section of that affidavit described the crux of the government's probable cause submission to Judge O'Connor:

> 14. LLOYD STEVEN GRISSOM has been granted immunity in the Western District of Missouri.... Between December 4, 1989, and April 15, 1991, GRISSOM was interviewed by Agents of the FBI and provided the following information:
>
> \* \* \* \* \* \*
>
> (e) GRISSOM explained that [TED] EHNEY [Grissom's former employer] had told him that in exchange for obtaining loans from MORGAN lending institutions, such as [Home Savings Association], EHNEY and [defendant LARRY] BRIDGES had to personally give FRANK MORGAN an ownership interest in the project when it was completed. GRISSOM stated this ownership interest given to MORGAN would be made to look legitimate and that limited partnerships in which MORGAN was a partner would appear to purchase an interest in the developed property.
>
> (f) GRISSOM stated that these purchases were actually fictitious transactions with no money ever actually changing hands, or the money was returned to MORGAN. Therefore, the ownership interest granted to MORGAN was not a purchase of the completed project by MORGAN, but rather a gift or kickback to MORGAN.

In other words, the FBI had information from an insider, Grissom, that real estate developers, Bridges and Ehney, regularly provided financial benefits to Morgan in exchange for loans from federally insured financial institutions controlled by Morgan, Ozar, Dreiseszun, and Feingold. There can be no doubt that, if proved, such kickbacks would constitute bank fraud and conspiracy to commit bank fraud under federal law. *See United States v. Willis,* 997 F.2d 407 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994).

The Bryars affidavit then described specific loan transactions that had been reviewed in the OTS criminal referral report to the FBI. The OTS report described in detail numerous loans totalling millions of dollars that financial institutions controlled by Mor-

gan, Ozar, and Dreiseszun had made to entities controlled by Bridges and Ehney for the benefit of projects or partnerships in which Morgan, Ozar, and Dreiseszun had acquired an ownership interest. *On their face,* these transactions were significant corroboration of the Grissom allegations, for they revealed that the bank insiders had acquired partial ownership interests in entities controlled by the borrower-developers, entities which benefitted from substantial loans by the insiders' banks. The OTS report did not confirm the payment of kickbacks, but it detailed a pattern of transactions consistent with Grissom's allegations.

Despite this strong showing of probable cause in the Bryars affidavit, defendants persuaded the magistrate judge to conduct a *Franks v. Delaware* evidentiary hearing. Defendants' theory at that hearing was that the loan transactions described in the OTS criminal referral were in fact legitimate transactions, that no loan proceeds were misappropriated by the alleged conspirators, that the FBI could have discovered the propriety of these transactions but recklessly failed to investigate further, and that Judge O'Connor would not have authorized electronic surveillance had he been given these additional facts.

The magistrate judge adopted this theory. Relying on defense witnesses who testified that the loan proceeds were properly used to further innocent transactions, and no doubt reinforced by the knowledge that no bank fraud charges were ever filed, the magistrate judge concluded that the FBI failed to include in the Bryars affidavit information that would have shown that these loan transactions were not evidence of criminal bank fraud because no loan proceeds were embezzled or misappropriated. That analysis is faulty. It ignores the fact that the primary probable cause showing to Judge O'Connor was Grissom's allegations of kickbacks to the bank insiders, not embezzlement or misappropriation of loan proceeds. In effect, the magistrate judge allowed defendants to redefine the alleged bank fraud as one involving misappropriation of loan proceeds, and then to argue that the government had no proba-

ble cause supporting that particular type of fraud.

Focusing on the theory of probable cause presented in the Bryars affidavit, Grissom's allegations of kickbacks, rather than on defendants' "straw man," misappropriation of loan proceeds, the magistrate judge's conclusion that the FBI recklessly failed to investigate material facts cannot be upheld. Near the end of his conclusions of law on this issue, the magistrate judge addressed the Grissom allegations. He expressly found that the Bryars affidavit "accurately stated the information relayed to the FBI by Grissom," and that this information "provided the issuing court with some credible evidence that the defendants were receiving kickbacks from Bridges and Ehney in exchange for financing from financial institutions controlled by the defendants." However, after finally reaching the critical issue, the magistrate judge dismissed it out of hand by stating, "This court believes that a complete review of the bank records of Ehney and Executive Hills North [an Ehney company] does not support the conclusion that the payments [of certain loan proceeds] represented kickbacks."

■ It was error for the magistrate judge to use bank records that were not submitted to the issuing court as a basis for second guessing that court's probable cause determination. More importantly, however, this statement shows that the magistrate judge simply misunderstood the nature of the corroborating evidence set forth in the Bryars affidavit. As we have discussed, the loan transactions summarized from the OTS report were corroboration for Grissom's kickback allegations, *even if those transactions standing alone were entirely innocent.* OTS may have filed its criminal referral because it suspected that these loan transactions were themselves fraudulent. But the Bryars affidavit did not need to show the transactions were fraudulent, nor did it need to establish that the loan proceeds were themselves the kickbacks. Grissom's allegations provided the probable cause to believe that a kickback conspiracy was in progress. The loan transactions confirmed that the bank insiders had acquired undisclosed interests in the develop-

ers' projects. The additional facts about these loan transactions that the magistrate judge thought the FBI recklessly failed to pursue were not essential to this showing of probable cause. Thus, there was no *Franks v. Delaware* violation, and we must reverse.

■ Although this ends the *Franks v. Delaware* inquiry, we add the following observations concerning the district court's approach to this issue. *First,* the Supreme Court in *Franks v. Delaware* cautioned that an evidentiary hearing is not warranted unless defendant makes a strong initial showing "of deliberate falsehood or of reckless disregard for the truth." 438 U.S. at 171, 98 S.Ct. at 2684. A suppression hearing is often warranted in wiretap cases to address statutory issues not present in conventional search warrant cases, such as whether electronic surveillance was necessary and whether it was properly minimized. But the need for a hearing on those statutory issues is an improper basis for expanding the very limited circumstances in which a *Franks v. Delaware* hearing is appropriate. *See United States v. Shields,* 783 F.Supp. 1058, 1064–65 (N.D.Ill. 1991).

■ *Second,* the magistrate judge broadly read our prior cases as equating material falsehoods and material omissions for purposes of establishing a *Franks v. Delaware* violation. We disagree. In a warrant affidavit, the government "need only show facts sufficient to support a finding of probable cause." *United States v. Dennis,* 625 F.2d 782, 791 (8th Cir.1980). Therefore, "recklessness may be inferred from the fact of omission of information from an affidavit ... only when the material omitted would have been 'clearly critical' to the finding of probable cause." *United States v. Reivich,* 793 F.2d 957, 961 (8th Cir.1986) (citation omitted). *See United States v. Anderson,* 933 F.2d 612, 615 (8th Cir.1991). Rarely will an unintentional omission be grounds for *Franks v. Delaware* relief when complex economic crimes are the subject of the investigation. In such cases, unless the government has lied to the issuing judge, the suppression issue should turn on what was in the government's affidavits, not on what defendants as-

sert with the benefit of hindsight the government should have known.

For example, during the suppression hearing in this case, defendants presented lengthy testimony by Larry Vohland, an accountant for defendant Bridges, to prove the legitimacy of the loan transactions summarized in the OTS criminal referral. FBI agents testified that they did not interview or subpoena Vohland in June 1991 to avoid compromising the investigation, a position that Judge O'Connor accepted as reasonable in deciding that electronic surveillance was necessary.[1] Beyond misperceiving the government's probable cause showing, the magistrate judge erred in focusing his *Franks v. Delaware* analysis on what the FBI could have learned with more investigation—which is relevant only to the statutory necessity issue—rather than on what the FBI actually knew when it prepared the Bryars affidavit.

■ *Third,* the critical final step in a *Franks v. Delaware* analysis is to determine whether the warrant affidavit, corrected for any false statements and omissions, is sufficient to show probable cause. *See United States v. Lucht,* 18 F.3d 541, 546 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994). In this case, the magistrate judge simply asserted that he had performed that step and found the Bryars affidavit lacking. That approach frustrates appellate review. In the future, we expect district courts granting suppression on *Franks v. Delaware* grounds to specify how the government's affidavits have been corrected or excised.

■ In this case, the record on appeal includes a document that defendants submitted to the district court showing their proposed excising of the Bryars affidavit. This modified affidavit retains Grissom's kickback allegations (*see* pages 1443–44 above), and retains the basic loan transaction facts that, in our view, sufficiently corroborate the Grissom allegations. Thus, even accepting the magistrate judge's findings regarding reckless omissions, defendants are not entitled to *Franks v. Delaware* relief.

■ In the absence of a *Franks v. Delaware* violation, the wiretap authorization order must be upheld if the Bryars affidavit provided the issuing judge "with a substantial basis for determining the existence of probable cause." *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Applying this deferential standard, Judge O'Connor's findings of probable cause must be upheld. *See United States v. Lueth,* 807 F.2d 719, 726–27 (8th Cir.1986).

## III. The Staleness Issue.

■ The district court also suppressed because "the majority of activity discussed in the [Bryars] Affidavit occurred in the years 1987–1989," and the information suggesting more recent, ongoing criminal activity was only speculative. Probable cause to issue a warrant must exist at the time it is issued. "Thus, delay in seeking and obtaining a search warrant may invalidate it. While the lapse of time involved is an important consideration and may in some cases be controlling, it is not necessarily so. There are other factors to be considered, including the nature of the criminal activity involved, and the kind of property for which authority to search is sought." *United States v. Steeves,* 525 F.2d 33, 38 (8th Cir.1975).

■ In this case, the FBI was investigating conspiracy to commit bank fraud. The passage of time is less significant when there is cause to suspect continuing criminal activity. *See United States v. Tallman,* 952 F.2d 164, 166 (8th Cir.1991), *cert. denied,* 504 U.S. 961, 112 S.Ct. 2319, 119 L.Ed.2d 237 (1992); *United States v. Jones,* 801 F.2d 304, 314 (8th Cir.1986). In February 1991 the FBI received the OTS criminal referral which focused on loan transactions in the 1987–1989 period. Staleness was obviously an issue, but in such cases, "where recent information corroborates otherwise stale information, probable cause may be found." *United States v. Macklin,* 902 F.2d 1320, 1326 (8th Cir.1990), *cert. denied,* 498 U.S. 1031, 111 S.Ct. 689, 112 L.Ed.2d 680 (1991).

---

1. The concern was valid—when FBI agents subsequently attempted to interview Vohland, they immediately received a phone call about the interview from R.J. Campbell, a Morgan attorney.

To address this issue, the FBI obtained and included in the Bryars affidavit two types of recent information. First, the agents again interviewed Grissom. Though no longer on the inside of the alleged kickback conspiracy, Grissom had some information suggesting that developer Bridges and the Morgan group were continuing to collaborate with the assistance of loans from a financial institution the Morgan group controlled. Second, recent FBI surveillance established that defendants continued to meet on Saturday mornings at the M.D. Management office. Defendants vigorously attack the significance and credibility of this information. But given the continuing nature of the suspected criminal activity, we conclude that it provided a "substantial basis" for Judge O'Connor's finding of probable cause to believe evidence of ongoing criminal bank fraud activity would be uncovered by electronic surveillance of the Saturday morning meetings. Stripped of its erroneous *Franks v. Delaware* underlay, the district court's contrary conclusion reflects "a *de novo* probable-cause determination" that is inconsistent with the deferential standard of review that must be accorded the issuing judge. *See Massachusetts v. Upton,* 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984).

## IV. The Minimization Issue.

■ The federal wiretap statute requires that electronic surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). Each of Judge O'Connor's authorization orders incorporated this requirement by providing:

> Monitoring of conversations must terminate immediately when it is determined that the conversation is unrelated to communications subject to interception.... Interception must be suspended immediately when it is determined ... that none of the named [targets] or any of their confederates ... are participants ... unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent shall spot check to insure that

the conversation has not turned to criminal matters.

To comply with this directive, AUSA Shernuk prepared, circulated to the monitoring agents, and submitted to Judge O'Connor a series of memoranda containing detailed "Minimization Instructions." These instructions were consistent with the then-current Department of Justice Electronic Surveillance Manual. The monitoring team's weekly meetings with Judge O'Connor included frequent discussions of minimization problems and issues but did not result in additional court orders.

The magistrate judge did not find that the monitoring agents departed in any way from these minimization instructions. However, he recommended suppressing all evidence obtained from the electronic surveillance of M.D. Management on the ground that the government violated its statutory duty to minimize. The magistrate judge concluded that the minimization instructions as interpreted by the monitoring agents resulted in the interception of "an extremely large number of otherwise innocent conversations," often "because the agents simply did not understand the subject matter [sophisticated business transactions] well enough to determine if the conversation was pertinent" to the criminal investigation. This analysis is contrary to controlling Eighth Circuit cases.

■ When considering a motion to suppress evidence obtained by lawful electronic surveillance, we evaluate the government's minimization efforts on a case by case basis, as the Supreme Court directed in *Scott v. United States,* 436 U.S. 128, 139, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978). *See United States v. O'Connell,* 841 F.2d 1408, 1416 (8th Cir.), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988). Relevant considerations include the number of target individuals, the ambiguity of the intercepted conversations, the complexity of the acts under investigation, and the extent of the issuing judge's involvement in the surveillance. "[W]hen the investigation is focusing on what is thought to be a wide-spread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise. And it is possible that

many more of the conversations will be permissibly intercepted because they will involve one or more of the co-conspirators." *Scott,* 436 U.S. at 140, 98 S.Ct. at 1725.

In this case, the agents were investigating many targets and a complex bank fraud conspiracy. They submitted their minimizing procedures to the issuing judge and reported minimizing problems to Judge O'Connor as the surveillance progressed. The agents used the "two minutes up/one minute down" minimization technique recommended in the Department of Justice Manual, a procedure we reviewed favorably in both *United States v. Smith,* 909 F.2d 1164, 1166 (8th Cir.1990), *cert. denied,* 498 U.S. 1032, 111 S.Ct. 691, 112 L.Ed.2d 682 (1991), and *United States v. Losing,* 560 F.2d 906, 909 n. 1 (8th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977). This technique provided intermittent spot-checking of minimized conversations, a procedure expressly authorized by Judge O'Connor and previously approved by this court. *See United States v. Daly,* 535 F.2d 434, 441–42 (8th Cir.1976).

In *Losing,* 560 F.2d at 909, we upheld a minimization effort in which monitoring agents minimized 80 out of 1200 phone calls, 400 of which were drug related. In this case, the government's logs showed 8,552 minimizations, 15,024 minutes intercepted, and 2,952 minutes of pertinent conversations. In view of the complex nature of the investigation and Judge O'Connor's continuing supervision, we conclude that the government's minimization procedures did not violate 18 U.S.C. § 2518(5).

■■■ At the suppression hearing, defendants identified numerous intercepted conversations in which an attorney participated. For the most part, defendants failed to prove that each conversation was attorney-client privileged,[2] and they also failed to prove bad faith interception of privileged communications. The magistrate judge nonetheless recommended, and the district court agreed, that total suppression was warranted as punishment because the inadvertent interception of numerous attorney communications re-flected a "pattern of unnecessary intrusion" into the privilege.

This punitive use of the suppression remedy was error. "Clearly Congress did not intend that evidence directly within the ambit of a lawful order should be suppressed because the officers, while awaiting the incriminating evidence, also gathered extraneous conversations. The nonincriminating evidence could be suppressed pursuant to 18 U.S.C. § 2518(10)(a), but the conversations the warrant contemplated overhearing would be admitted." *United States v. Cox,* 462 F.2d 1293, 1301 (8th Cir.), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1972). Because there was no bad faith attempt to obtain privileged conversations, if privileged conversations were intercepted (and the government seems to concede that some inadvertently were), those conversations should be suppressed on an individual basis at or before trial. *See United States v. Shakur,* 560 F.Supp. 318, 326 (S.D.N.Y.1983), *aff'd sub nom. United States v. Ferguson,* 758 F.2d 843 (2d Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985).

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

---

2. Attorneys frequently take part in non-privileged conversations during the course of complex real estate and loan transactions.