# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————————

No. 97-3422

———————————

| | | |
|---|---|---|
| Bill Walden;  Barbara White; | * | |
| Betty Rae Walden; and Billy G. Walden, | * | |
| | * | |
| Appellees, | * | |
| | * | Appeal from the United |
| v. | * | States District Court |
| | * | for the Western District |
| James Roy Carmack, Sheriff, Montgomery County; | * | of Arkansas |
| Montgomery County, Arkansas, a political | * | |
| subdivision, State of Arkansas, | * | |
| | * | |
| Appellants. | * | |

———————————

Submitted:    February 10, 1998

Filed:    September  28 , 1998

———————————

Before RICHARD S. ARNOLD, [1] Chief Judge, HANSEN, Circuit Judge, and LIMBAUGH,[2] District Judge.

LIMBAUGH, District Judge

———————————

[1] The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998.  He has been succeeded by the Hon. Pasco M. Bowman II.

[2] The Hon. Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation.

Bill Walden, Betty Rae Walden, Billy G. Walden, and Barbara White a/k/a Barbara Stone filed suit against Sheriff James R. Carmack, Deputy Sheriff Terry Black, Deputy Sheriff Mary Williams, Deputy Sheriff Gary Grey, Deputy Sheriff J.L. Wheeler, Deputy Sheriff Shane Stovall, and Montgomery County, Arkansas under 42 U.S.C. §1983 and supplemental state claims. Specifically, the plaintiffs alleged unreasonable search and seizure, false arrest and malicious prosecution under the Fourth Amendment; taking of property without due process under the Fifth Amendment; and unreasonable bond under the Eighth Amendment. They furthermore alleged state claims of trespass, malicious prosecution, and outrage. The defendants sought summary judgment based on the merits of the claims and on qualified immunity. The district court summarily determined that genuine issues of fact existed and denied their motion, and Carmack and Montgomery County appeal that finding.[3]

## I. BACKGROUND

In 1992, the Arkansas State Police and the Montgomery County Sheriff's Department initiated an investigation into alleged illegal activity on real property occupied by Bill Walden, but apparently owned by Bill Walden's mother, Betty Rae Walden and Bill Walden's son, Billy G. Walden.[4] The investigation initially focused

---

[3]Although counsel entered his appearance on behalf of all of the defendants, the notice of appeal clearly names only defendants Carmack and Montgomery County as the parties filing the notice of appeal. Consequently, this Court only recognizes defendants Carmack and Montgomery County as the appellants of record.

[4]One of the numerous gaps of information present in this appeal is who was residing on this property besides Bill Walden at the time in question. Although not material to the appeal, it appears that Betty Rae Walden and Barbara White a/k/a Stone were also residing on this property.

upon alleged stolen property kept on the premises; however, in 1993 the investigation expanded into alleged drug activity.

A confidential informant and Arkansas State Police Investigator Steve Clemmons visited (in an undercover capacity) the subject real property several times and spoke with Bill Walden. Some of these conversations were tape-recorded. The conversations (taped and untaped) led Arkansas State Police personnel to believe that Bill Walden was voluntarily assisting the confidential informant with setting up a methamphetamine (meth) lab on the real property, and offering to sell allegedly stolen merchandise to the confidential informant.

On March 1, 1993 Arkansas State Police Investigator Clemmons, Arkansas State Police Sergeant Phillip Wamock[5], and the confidential informant appeared before Judge William H. McKimm with an application for a search warrant for the subject Walden property. This same date, a judicial hearing was held to determine if probable cause to issue the search warrant existed. None of the defendants, nor any other law enforcement personnel from Montgomery County appeared before Judge McKimm or participated in the hearing in connection with the issuance of the search warrant.

The police officers and the confidential informant provided recorded testimony in support of the search warrant application. In addition to the tape-recorded conversations with Bill Walden, the confidential informant testified, under oath, to other conversations he had with Bill Walden. He testified as to his conversations

---

[5]All the documents filed before this Court, including the appellate briefs, vary in their spelling of these two Arkansas State Police officers' names. Simply as a matter of efficiency, the Court will spell their names as "Clemmons" and "Wamock". Apologies are extended to these officers for any inadvertent misspelling of their names.

with Bill Walden regarding the rental of a house on the property in which the confidential informant planned to set up a meth lab. He further testified as to Bill Walden's assistance in setting up the meth lab; to the presence of numerous vehicles with altered identification numbers and other assorted items on the premises; as to conversations with Bill Walden in which Bill Walden offered to sell him a Ford pick-up below the fair market value; and as to Bill Walden's possession of one or more guns.

Both Arkansas State Police officers testified as to what they observed on the real property; i.e. motor vehicles whole and in parts, and tools commonly used to disassemble cars. Investigator Clemmons testified to his conversations with Bill Walden regarding the creation of the meth lab on the real property. Sergeant Wamock testified as to his expertise in the field of auto theft and his prior contact with Bill Walden regarding an alleged stolen Ford Ranger II pick-up truck.

Investigator Clemmons testified as to the credibility and reliability of information provided by the confidential informant. Investigator Clemmons also testified that the confidential informant was considered very reliable by other law enforcement agencies and that he found the confidential informant's information provided during the current investigation to be extremely reliable and credible.

The reviewing judge found probable cause to exist that evidence of illegal controlled substance activities and stolen property would be found on the premises in question. He issued a search warrant authorizing the search of "any and all storage units, locked or unlocked; any and all rental storage units, locked or unlocked"; as well as all outbuildings, enclosures, or structures within, as well as outside, the curtilage of the personal residence at the described real property. The search warrant authorized the search for and seizure of drug paraphernalia, stolen property, weapons, documents relating thereto, and any and all things considered contraband or evidence of criminal activity.

On March 1, 1993 the search warrant was served on Bill Walden. At the time of the service of the warrant, he was the only one on the property in question. The warrant was executed by Sheriff Carmack, various deputy sheriffs in the Montgomery County Sheriff's Department, and various law enforcement personnel from the Arkansas State Police. The officers searched the premises and property described in the warrant over a four-day period. Numerous items was confiscated, including but not limited to, semi-automatic weapons, automobile vehicle identification plates, vehicles with altered or destroyed vehicle identification numbers, various tools, and numerous knives. The items seized were documented on an inventory list.

Bill Walden was arrested and charged with violating controlled substance laws and possessing stolen property. At his initial appearance, Judge Gayle Ford set his bond at $75,000.00. This was later reduced by Judge Ford to $25,000.00. Although Sheriff Carmack generally accepts a property bond in lieu of a cash bond, he refused to accept a property bond from Bill Walden because Bill Walden had provided him with false information with regard to a property bond in a prior incident. Bill Walden remained in custody for approximately sixty (60) days before making bond.

State forfeiture proceedings were later instituted against the subject real property pursuant to Arkansas' drug forfeiture statute, Ark.Code.Ann. §5-64-505. It is unclear as to whether these proceedings were dismissed prior to completion, or if the forfeiture was obtained. In May 1994, the Prosecuting Attorney for Montgomery County nolle prossed all criminal charges against Bill Walden. On May 20, 1994 a number of items seized were transferred to the possession of the Federal Bureau of Investigation by order of Judge Gayle Ford. It is unclear as to the status of the remaining items, although it appears that some have been returned to the plaintiffs, while others have been retained pending further criminal investigation.[6]

_____

[6]The parties dispute as to whether some items have been retained pursuant to an IRS tax lien and/or as part of a bankruptcy proceeding. As will be discussed

The plaintiffs filed a 42 U.S.C. §1983 and state-claims action in district court in March 1996, alleging, among other points, that Sheriff Carmack, various Montgomery County deputy sheriffs, and Montgomery County violated their Fourth, Fifth, and Eighth Amendment rights in connection with the search and seizure of the property occupied by Bill Walden, the arrest of Bill Walden, and the subsequent forfeiture proceedings. The defendants filed a motion for summary judgment. They not only argued the merits of the plaintiffs' claims, but also argued that they were entitled to qualified immunity for their actions in connection with the search and seizure on March 1, 1993, the setting of the bail bond, and the initiation of a forfeiture action against the searched property. The district court[7] denied the summary judgment motion, concluding that "various factual issues" remained in dispute regarding, among other things, the issuance of the March 1, 1993 search warrant and whether the execution of the search warrant exceeded the scope of the search warrant. Defendants Carmack and Montgomery County now appeal the district court's ruling. *See*, Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)(a district court's denial of a claim of qualified immunity, "to the extent that it turns on an issue of law" is an appealable final decision under the collateral order doctrine).

## II. DISCUSSION

Before embarking on a discussion and resolution of the dispute present in this appeal, it is necessary to clarify exactly what the dispute on appeal is and, more so, what it is not. The appellees in this appeal appear to be all of the original plaintiffs. As stated before, the only appellants of record in this matter are Sheriff Carmack and

later, the status of these items is not fatal to the defendants' qualified immunity defense since plaintiffs have available to them a state post-deprivation remedy.

[7]The case was presided over by a Magistrate Judge by consent of the parties. See 28 U.S.C. § 636(c).

Montgomery County.[8]  The real confusion lies in the substance of the legal claims before this Court.

The Court determines, that despite the broad coverage of numerous legal issues by the appellees and appellants at oral argument, and in their briefs, only the question of qualified immunity is properly before us on this appeal.  Furthermore, the question of qualified immunity shall only be addressed in the context of Sheriff Carmack's actions with regard to the events of March 1, 1993 and bail conditions set for Bill and Billy Walden.

Although the decision denying summary judgment summarily refers to a search conducted in July 1994 on a piece of property allegedly owned by Billy Walden as one of the factual issues remaining in dispute, this Court finds that the July 1994 search is not a material fact relevant to this lawsuit.  The plaintiffs' complaint refers to the July 1994 search as part of its background material, but notably, this search is not the specific subject of any one of the counts of the complaint.  Furthermore, the parties do not address it in the summary judgment pleadings; instead focusing entirely on the March 1, 1993 search.  Finally, the July 1994 search is not the subject of any of the written or oral arguments presented on appeal.  The Court determines that the plaintiffs' complaint and this appeal are focused entirely on the events and circumstances involving the March 1, 1993 search and seizure, arrest of Bill Walden, and bail conditions for Bill and Billy Walden.  Consequently, the Court will not address any matter in connection with the alleged warrantless search of Billy Walden's real property in July 1994, or the alleged second warrant search of this same property in July 1994, or the subsequent arrest of Billy Walden.

_____

[8]At oral argument, appellees' counsel conceded that the remaining deputy sheriffs defendants were entitled to qualified immunity with regard to the issuance of the search warrant for the search conducted on March 1, 1993.

Although the parties argue the merits of qualified immunity for appellant Montgomery County, such arguments are without merit because a municipality may not assert qualified immunity as a defense. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993). This appeal, as asserted by appellant Montgomery County, is dismissed.

Finally, it appears that the appellees have abandoned their § 1983 claim for malicious prosecution, leaving only their state claim for malicious prosecution viable; however, the issue of qualified immunity is not relevant to a state claim for malicious prosecution. Thus, this appeal as to the state claim of malicious prosecution is dismissed.

A.  Qualified Immunity Standard on Appeal

A district court's denial of a defendant's summary judgment motion based on qualified immunity is an immediately appealable decision, even though the denial is not a final judgment. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). In an appeal from the denial of a motion for summary judgment based on qualified immunity, the appellate court has jurisdiction to review, de novo, the abstract issues of law relating to the existence of qualified immunity.

A defendant official is entitled to summary judgment, if the record, when viewed in the light most favorable to the plaintiff, the non-moving party, reveals that there is no genuine issue as to any material fact regarding the immunity issue and that the defendant is entitled to judgment as a matter of law. Ripson v. Alles, 21 F.3d. 805, 808 (8th Cir. 1994). In resolving a case in which the defense of qualified immunity has been raised, this Court must determine whether the appellees asserted a violation of a federal right, whether that right was clearly established, and whether a reasonable official in appellant Carmack's position would have known that his conduct violated that right. Thus, we are required to undertake a legal analysis of whether the appellees' allegations and the evidence presented, taken in the light most

favorable to the appellees, present one or more claims that appellant Sheriff Carmack violated well-established rights of the appellees.  Otey v. Marshall, et. al., 121 F.3d 1150, 1155 (8th Cir. 1997).  However, since the district court did not state the set of facts upon which it made its decision, this Court must review the record to determine what facts the district court likely assumed, in the light most favorable to the appellees.  Otey v. Marshall, 121 F.3d at 1155.

The appellees primarily assert that the appellants are liable for violating the appellees' constitutional rights because they secured and exercised a search warrant which was not based on probable cause.  They assert that probable cause was lacking because the reliability of the confidential informant was not established.  They further assert that since the search and seizure were illegal, the subsequent forfeiture proceedings were initiated in violation of the appellees' due process rights and they have been unconstitutionally deprived of their property.  Finally, appellees Bill and Billy Walden assert that appellants unconstitutionally deprived them of their liberty by setting an unreasonable bond and refusing a property bond in lieu of a cash bond.

B.  Probable Cause to Issue the Search Warrant

Public officials, such as governors, prison officials, school board members, parole board members, and police officers, who exercise some discretionary functions while carrying out their executive duties generally have available to them qualified immunity from §1983 actions.  These persons are immune from suit on the basis of qualified immunity unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); George v. City of St. Louis, 26 F.3d. 55, 57 (8th Cir. 1994).  In Anderson v. Creighton, 483 U.S. 635 (1987), the Supreme Court examined the scope of the Harlow "clearly established" standard in a civil rights action against a law enforcement officer involved in a warrantless premises search.  Whether a law enforcement official entitled to the protection of qualified immunity may be held personally liable for the alleged unlawful action will depend on the

"objective legal reasonableness" of the action, which must be assessed in light of the laws or "legal rules" that were "clearly established" at the time the action occurred. Anderson, 483 U.S. at 639-40; *see*, George v. City of St. Louis, 26 F3d at 57; Cole v. Bone, 993 F.2d. 1328, 1332 (8th Cir. 1993). The Court specifically held that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right". Anderson, 483 U.S. at 639-40.

Under the "objective legal reasonableness standard", courts are not permitted to investigate the subjective motivation of the law enforcement officer. Harlow, 457 U.S. at 800; Foster v. Metropolitan Airports Commission, 914 F.2d. 1076, 1079 n.4; Gorra v. Hanson, 880 F.2d. 95, 97 (8th Cir. 1989). "A defendant's good faith or bad faith is irrelevant to the qualified immunity inquiry." Burk v. Beene, 948 F.2d. 489, 494 (8th Cir. 1991). In the context of a police officer obtaining a search warrant, "immunity will be lost only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." George v. City of St. Louis, 26 F.3d at 57 (citing Malley v. Briggs, 475 U.S. 335, 344-45 (1986)).

There is no question here that the law is established as to the requirement of probable cause for the issuance of a search warrant. The question to be addressed is whether there is a genuine issue of material fact as to whether the appellants' actions violated the law; i.e., whether the appellants' actions were objectively reasonable under the established standard of Malley. If a case involves a question of probable cause for a law enforcement official's actions, the case should not proceed past the discovery stage if there is any reasonable basis to conclude that probable cause existed. Cross v. City of Des Moines, 965 F.2d. 629, 632 (8th Cir. 1992) (citing Hunter v. Bryant, 502 U.S. 224, 227-228 (1991)). A defendant need not show that there was only one reasonable conclusion for a jury to reach on whether probable cause existed, but rather, a court should ask whether the law enforcement officials acted reasonably under settled law in the circumstances then existing, not whether

another reasonable, or more reasonable interpretation of the facts can be constructed years later. Cross, 965 F.2d at 632; *see also*, Hunter, 502 U.S. at 228.

To be valid, a search warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause may be found in the place to be searched. Warden v. Hayden, 387 U.S. 294 (1967); Johnson v. United States, 333 U.S. 10 (1948). The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Johnson, 64 F.3d. 1120, 1126 (8th Cir. 1995). Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. at 232. Applications and affidavits should be read with common sense and not in a grudging, hyper technical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965). Probable cause may be found in hearsay statements from reliable persons, Illinois v. Gates, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, United States v. Williams, 10 F.3d. 590, 593 (8th Cir. 1993) (citing Draper v. United States, 358 U.S. 307, 313 (1959)); *see also*, United States v. Mambu Fulgham, 143 F.3d. 399 (8th Cir. 1998); or in observations made by trained law enforcement officers, McDonald v. United States, 335 U.S. 451, 454 (1948).

Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. Illinois v. Gates, 462 U.S. at 230. Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference. Illinois v. Gates, 462 U.S. at 236. Consequently, when we review the sufficiency of an affidavit supporting a search warrant, resulting in a finding of probable cause by the issuing judge, we accord great

deference to that issuing judge.

When an affidavit contains information provided by a confidential informant, a key issue that must be addressed is the reliability of that informant. *See*, United States v. Brown, 49 F.3d. 1346, 1349 (8th Cir. 1995). Information may be sufficiently reliable to support a probable cause determination if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence. U.S. v. Williams, 10 F3d at 593 (citing Draper, 358 U.S. at 313). If the information provided by the informant is shown to be reliable because of independent corroboration, "then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." U.S. v. Williams, 10 F.3d at 593 (citing Illinois v. Gates, 462 U.S. at 233-34; Draper, 358 U.S. at 313).

In the present case, appellees argue that the appellants violated their clearly established Fourth Amendment rights because the search warrant was issued on the basis of "false information" given by the confidential informant. They assert that the appellants failed to establish the reliability and credibility of the confidential informant because neither of the testifying officers had personally worked with the informant prior to the Walden investigation. We find these arguments meritless.

Firstly, it is undisputed that neither Sheriff Carmack nor anyone connected with Montgomery County testified before Judge McKimm. The only persons who testified in connection with the issuance of the March 1, 1993 search warrant were the two Arkansas State Police officers, Investigator Clemmons and Sergeant Wamock, and the confidential informant. It is clearly established that neither Sheriff Carmack nor anyone connected with Montgomery County participated in any manner with the representation or misrepresentation of information to the issuing judge. On this basis alone, appellant Carmack is entitled to qualified immunity with regard to the issuance of the search warrant.

However, accepting for the moment the appellees' argument that the confidential informant was Sheriff Carmack's agent with respect to the beginnings of the investigation, the Court still finds that probable cause for the issuance of the search warrant existed. In the present case, the informant's credibility was established, and his information shown reliable. The information provided by the informant was corroborated by both Arkansas State Police officers. On more than one occasion, Investigator Clemmons had accompanied the informant to the Walden property and observed both the property and Bill Walden. Taped conversations with Bill Walden corroborated the informant's testimony. Sergeant Wamock testified that he personally observed items on the property which corroborated the observations of the informant. In all relevant respects, both long-time experienced law enforcement officers verified the accuracy of the informant's information. Finally, Investigator Clemmons testified as to the informant's reliability and credibility working with other law enforcement agencies.

More importantly, the confidential informant appeared in person before the issuing Judge and gave sworn testimony under oath. The Judge was able to make his own credibility findings necessary for a probable cause determination.

Furthermore, no Fourth Amendment violation occurred because even if the alleged misrepresentations of the confidential informant are not considered, the remaining portions of the law enforcement officials' testimony was sufficient to establish probable cause. Under Franks v. Delaware, 438 U.S. 154 (1978), if an application or affidavit contains errors reflecting deliberate falsehoods or reckless disregard for the truth, the issuing court must "set aside those statements and then review the remaining portions of the affidavits to see if what remain[s is] sufficient to establish probable cause." United States v. I.I. Ozar, 50 F.3d. 1440, 1443 (8th Cir. 1995) (citing United States v. Garcia, 785 F.2d. 214, 222 (8th Cir. 1986)); *see also*, Schwartz v. Pridy, 94 F.3d. 453, 457 (8th Cir. 1996). Here, there was enough

independent evidence consisting of the taped conversations with Bill Walden, and the personal observations of the two law enforcement officials from which the issuing judge could have found probable cause existed for the issuance of the search warrant. Consequently, we find that the testimony given before the issuing judge sufficiently established the reliability and credibility of the confidential informant, and that the application and affidavit based upon this testimony provided a substantial basis upon which the issuing judge could conclude that probable cause existed.

Upon review of the record in a light most favorable to the appellees, the Court finds that appellant Carmack did not violate the clearly established Fourth Amendment right against issuance of a search warrant without probable cause, and thus, is entitled to summary judgment on the basis of qualified immunity on this claim.

C. Unreasonable Execution of the Search Warrant

The appellees next contend that their Fourth and Fourteenth Amendment rights were violated because the execution of the search warrant was unreasonable. They contend that, not only was the search unconstitutional because the search warrant was issued without probable cause, but the resulting seizure of numerous items went beyond the scope of the search warrant. These arguments also are not persuasive.

Although the search warrant was issued after a proper finding of probable cause, it does not necessarily follow that the execution of a valid warrant is also constitutional. A search warrant can be based on the best of probable cause, but if the officers who execute it overstep its self-contained limits, the execution becomes unconstitutional.

The appellees first argue that the execution of the search warrant was unconstitutional because the issuance of the search warrant was constitutionally flawed. This argument is meritless for two reasons. Firstly, this argument is mooted

by our determination that the issuance of the search warrant was constitutional. Secondly, even if the search warrant had been issued without a proper finding of probable cause, the officers who executed the warrant acted in the good faith belief that probable cause existed based on the issuance of the warrant. Given the specific information in the search warrant affidavit provided by the taped conversations, the sworn testimony of the confidential informant, and the two Arkansas State Police officers, it would have been objectively reasonable for the officers executing the search warrant to have relied on the issuing judge's determination that probable cause existed. *See*, U.S. v. Johnson, 64 F.3d at 1126 (even if facts in affidavit did not give rise to probable cause, officers acted in good faith based on the issuance of the warrant and specific information contained therein); United States v. Smith, 63 F.3d 766, 769 (8th Cir. 1995) (search warrant not facially invalid and contained sufficient facts that officers could have executed it with objective good faith reliance on probable cause determination of magistrate judge).

The appellees next argue that the appellants alleged search of the premises outside the boundaries of the property described in the search warrant and alleged seizure of personal property beyond the scope of the warrant constituted an unreasonable search and seizure. They appear to argue that the search of certain lockers on the property was unreasonable, as was the search of two trailers belonging to appellee White which were allegedly located on property outside the tract of property described in the search warrant.

The search warrant provided for the search of "any and all storage units, locked or unlocked, any and all rental storage units, locked or unlocked." The warrant further identified all outbuildings, enclosures, or structures within, as well as outside, the curtilage of the personal residence at the described real property. Contrary to the appellees' assertions, the search warrant clearly authorized the search of all storage units, either used by the appellees or rented out to third parties, and locked or unlocked. However, appellee White's claim that her two trailers were unreasonably

searched and items therein seized does raise a material issue of fact regarding the alleged search of property outside the boundaries of the property described in the search warrant. Appellee Bill Walden attests that "officers from Montgomery County Sheriff's Department, including Sheriff Carmack and officers from other law enforcement agencies, came upon the property and instituted a full scale search of the entire property including . . . the trailers both on and off the property . . . ." Appellee Barbara White a/k/a Stone testified, at her deposition, that "well, I had two trailers, I think, that wasn't even setting on that property. None of it. They shouldn't have been in none of it." A review of the record indicates that appellant Carmack failed to sufficiently show, in order to maintain his defense of qualified immunity on this claim, that either the trailers in question were, in fact, located on the property described in the search warrant, or that he reasonably believed that they were on that property. The district court did not err in denying summary judgment on this particular claim.

The search warrant authorized the seizure of any and all items or things defined as drug paraphernalia under Arkansas drug laws; specifically described stolen property including motor vehicles, motor vehicle parts, motor vehicle license plates, vehicle identification number plates (VIN), and documents pertaining thereto; and "any and all items or things considered contraband or is evidence of criminal activity pursuant to the laws of the State of Arkansas and the United States of America." The items seized, included but were not limited to, guns, knives, ammunition, power tools, motor vehicles with VIN plates, drug paraphernalia, motor vehicle parts, explosives, and assorted coins.

The appellees argue that items were seized outside the scope of the search warrant because Sheriff Carmack could not give a legal reason for their seizure, and because these items have been retained. Appellees argue that this is evidence of the appellants' "bad faith" in executing the search warrant. Firstly, the appellants' alleged "bad faith" is irrelevant to the qualified immunity inquiry. Burk v. Beene, 948 F.2d.

at 494. Secondly, Sheriff Carmack did not apply for the search warrant. The investigation was supervised by the Arkansas State Police and they applied for the search warrant. Sheriff Carmack's uncertainty as to why specific items were seized is irrelevant to the inquiry as to whether his actions in executing the warrant were objectively reasonable in light of the wording of the search warrant.

Although the manner by which to execute a search warrant is generally left to the discretion of officers executing a warrant, possession of a search warrant does not give the executing officers carte blanche as to its execution. Hummel-Jones, et. al. v. Strope, et. al., 25 F.3d. 647, 650 (8th Cir. 1994). "The manner in which a warrant is executed is always subject to judicial review to ensure that it does not traverse the general Fourth Amendment proscription against unreasonableness. The `when' and `how' of otherwise legitimate law enforcement actions may always render such actions unreasonable." Hummel-Jones, 25 F.3d at 650. In order to show that a law enforcement official is not entitled to qualified immunity with regard to the execution of a search warrant, the appellees must establish that from the perspective of a reasonably objective police officer on the scene, without regard to the actual intent or motivation of appellant Carmack or someone representing the interests of Montgomery County, their conduct was not objectively reasonable. Graham v. Connor, 490 U.S. 386, 396-97 (1989). Taking the facts in the light most favorable to the appellees, we find that the seizure of items was reasonable, except to the extent that items were allegedly seized from appellee White's trailers.

There is no question that the search was extensive. However, this fact alone does not make it unreasonable. Regardless of the fact that many of the items were "personal property" of one or more of the appellees, the appellees fail to show how any of the items seized were inconsistent with the parameters of the search warrant. Law enforcement officials must have probable cause to believe that items seized in connection with a valid search warrant are associated with suspected criminal activity. "Probable cause demands not that an officer be `sure' or `certain' but only

that the facts available to a reasonably cautious man would warrant a belief `that certain items may be contraband or stolen property or useful as evidence of a crime.'" United States v. Weinbender, 109 F.3d. 1327, 1330 (8th Cir. 1997)(citations omitted). Given the wording of the search warrant, and the known circumstances giving rise to the search, objectively reasonable law enforcement officials could have believed that the items seized were of such an incriminating nature as to constitute contraband or evidence of criminal activity. Appellant Carmack is entitled to qualified immunity on this claim, except as regards his alleged seizure of items from appellee White's trailers. Since a material issue of fact exists as to the location of these trailers at the time of the search, the seizure of any items from these trailers precludes the granting of summary judgment on the basis of qualified immunity to appellant Carmack on this particular claim.

D. Taking of Appellees' Property without Due Process

Appellees argue that their Fifth and Fourteenth Amendment rights have been violated because the issuance and execution of the search warrant constituted a taking of the appellees' property without just compensation. They contend that the search warrant was issued and executed without regard to due process requirements, and that their property is being wrongfully withheld from them.

The appellees fail to state exactly what process they were denied that the appellants were obligated to provide. Taking the facts in a light most favorable to the appellees, it is clear that the appellees received all of the due process required under the Fifth Amendment as regards the issuance of the search warrant. The search warrant was issued following a hearing held before a neutral and detached judicial officer. Tape-recorded conversations with Bill Walden and the sworn testimonies of the confidential informant and two Arkansas State Police officers were considered by the judicial officer. Upon consideration of this evidence, the judicial officer found that probable cause existed for the issuance of the search warrant. The appellees' Fifth Amendment due process rights were protected with regard to the issuance of the

search warrant on March 1, 1993.

However, even if the execution of the search warrant was unreasonable as to the alleged seizure of items from appellee White's trailers, the appellees' Fifth Amendment due process rights were not violated. Arkansas provides for adequate state post-deprivation remedies that satisfy due process. Appellees concede that they have failed to exhaust their state post-deprivation remedy of petitioning the circuit court for return of the seized property pursuant to Arkansas statute. ARcrP § 15.2. *See* Hudson v. Palmer, 468 U.S. 417, 533 (1984); *see also*, Orebaugh v. Caspari, 910 F.2d 526 (8th Cir. 1990). Denial of summary judgment based on qualified immunity for a Fifth Amendment violation was inappropriate.

E. Excessive Bail

Appellees contend that appellants deprived Bill Walden and Billy Walden of their right to be free from excessive bail. They contend that appellants "set" excessively high bonds for Bill and Billy Walden, then refused to accept a property bond in lieu of a cash bond which resulted in a period of incarceration before being able to make bond.

In Arkansas, the function of determining the appropriateness of pretrial release, the amount of bail bond, and the type of bail bond lies solely with the judicial officer. ARcrP §8.5; ARcrP §9.2. Assuming that Sheriff Carmack did make certain recommendations regarding the amount of the bond, setting the bail bond is entirely at the discretion of the presiding judge. Since the setting of bail bond is a function of the judicial officer and not of the Sheriff of Montgomery County, appellant Carmack is entitled to qualified immunity on the claim of excessive bail.

Furthermore, assuming again that Sheriff Carmack refused to accept a property bond in lieu of a cash bond, appellees fail to establish any constitutional right to a certain type of bond. Appellant Carmack is entitled to qualified immunity since

appellees have failed to show that clearly established Eighth Amendment law exists requiring a property bond to be accepted in lieu of a cash bond or that a reasonable law enforcement officer would have known, on the information available, that his or her actions violated clearly established Eighth Amendment law regarding the substitution of a property bail bond for a cash bail bond. Appellant Carmack is entitled to qualified immunity on the appellees' claim regarding refusal to substitute a property bail bond for a cash bail bond.

## III.  CONCLUSION

We hold that the district court erred in denying summary judgment to Sheriff Carmack on all claims, except for Ms. White's Fourth Amendment claim regarding the alleged unreasonable search and seizure of items from her two trailers. The district court's judgment is reversed except as to the denial of summary judgment on the basis of qualified immunity to Sheriff Carmack as regards Ms. White's Fourth Amendment claims. This case is remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.