**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Darren D. DAMPER, Defendant.**

**No. 8:04CR145.**

United States District Court,
D. Nebraska.

Dec. 6, 2004.

Susan T. Lehr, Assistant United States Attorney—Omaha, Omaha, NE, for Plaintiff.

Michael J. Poepsel, Shannon P. O'Connor, Federal Public Defender's Office—Omaha, Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

This matter is before the court on defendant's objections, Filing No. 43, to the reports and recommendations of the magistrate, Filing Nos. 39 and 40. Defendant is charged with possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Filing No. 1. Defendant filed a motion requesting a *Franks* hearing, Filing No. 15, and a motion to suppress statements, Filing No. 16. The magistrate conducted hearings on both issues on July 2, 2004, and on July 30, 2004. Filing Nos. 34 and 38. The magistrate first concluded that the affidavit for the search warrant contained information which may be false and knowingly and intentionally included with reckless disregard for the truth, and thus allowed a *Franks* hearing. Filing No. 38, Tr. 125:2–18. He further concluded, however, that both motions should be denied on their merits.

A district court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(B); *Branch v. Martin,* 886 F.2d 1043, 1045 (8th Cir.1989). I have reviewed the record, the transcript of both hearings, and the relevant case law. I conclude that the motion to suppress should be granted.

*History*

Officers Jeffrey Gassaway and George Collins were conducting surveillance on North 29th Street on or about February 23, 2004. On that date the officers noted vehicles pulling into and then exiting a residence at 4719 N. 29th Street. One of the cars leaving the residence was a blue Cadillac. The officers followed the Cadillac, observed the car "weave" in and out of its lane, and initiated a traffic stop. Upon approaching the Cadillac, the officers noticed an open container of beer. The occupant, Phillip Gaines, exited the car and the officers searched both him and the car. The officers found a small baggie of powder cocaine and a small baggie of marijuana on his person. The officers took Gaines to their patrol car and began questioning him. About that time Sergeant Gonzalez arrived and joined them in the vehicle.

During the *Franks* and the suppression hearings, the officers testified that Gaines told them that he purchased the drugs from the defendant, Darren Damper, at 4719 North 29th Street and did so a couple of times a month. Gaines indicated that he had paid $25 for the cocaine he currently possessed. Gaines, however, filed an affidavit in the suppression and *Franks* hearings which states that he did not tell the officers that he purchased or received the drugs from Darren Damper's residence on February 23, 2004, because they were in fact purchased from another individual. Ex. 1.

The officers testified that they asked Gaines to assist them in setting up a drug buy the next day from Damper. The officers indicated that such cooperation would result in charges not being filed against

Gaines. The officers then permitted Gaines to leave the scene. No field sobriety tests were given nor tickets issued. No reports were filed with the county attorney; Gaines has not been charged or booked with any law violations to date; and Officer Gassaway prepared an affidavit and search warrant. Ex. 2. The judge signed the warrant. Allegedly, the next day Gaines attempted to call Damper. Damper did not answer. Gaines then allegedly made another call. The officers, plus an emergency response team, staked out the residence. At some point Damper and a woman arrived at the residence, and the officers executed the search warrant.

*The Search Warrant*

■ Generally, a court must look at the affidavit to determine if it supports the search warrant and the probable cause requirement. *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A defendant is entitled to a hearing if he makes a preliminary showing that a false statement was knowingly and intentionally or with reckless disregard for the truth made and included in the affidavit for a search warrant. *Franks v. Delaware,* 438 U.S. 154, 155, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). If this evidence is established by a preponderance, and the remaining content is insufficient to establish probable cause, the search warrant is voided and the fruits of the search excluded. *Id.* The court may invalidate a search warrant if "the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Reinholz,* 245 F.3d 765, 774 (8th Cir.2001). The question is whether the omission was critical to a finding of probable cause. *United States v. Reivich,* 793 F.2d 957, 961 (8th Cir.1986). Once this showing is made, the second step in the *Franks* analysis is to determine whether the warrant is sufficient to establish probable cause, absent the misleading and omitted statements. *United States v. Stropes,* 387 F.3d 766 (8th Cir.2004); *United States v. Ozar,* 50 F.3d 1440, 1446 (8th Cir.1995).

■ I find that there are serious misrepresentations and omissions in the search warrant before me. First, the warrant states: "The driver was identified as Phillip Gaines ... who was subsequently arrested for Possession of a Controlled Substance—Cocaine and Possession of Marijuana Less Than an Ounce." This statement is at best misleading and at worst untrue. There is no doubt that the officers detained Gaines at the scene. However, the testimony supports a finding that Gaines left the scene, he was not taken into custody, and no charges were ever filed against him. At the suppression hearing, Officer George Collins testified, "At that time, I placed Mr. Gaines under arrest—or I put him in handcuffs and escorted him back to our vehicle." Tr. at 15. Officer Gassaway then gave Mr. Gaines his *Miranda* rights. *Id.* Officer Gassaway testified,

Q. The decision obviously was made not to arrest Mr. Gaines at that time; is that correct?

A. That's correct.

Q. Why?

A. Because we—we had—we—for his cooperation, we told him that we were not ready to arrest him at this time. We did not offer him any promises of not being arrested later, but we just said if you would cooperate with us we'd consider not going forward with any charges, which we commonly do.

Tr. 35:6–14.

Q. And you told him that because of his cooperation, he was not going to be arrested that evening?

692

A. True.

Tr. 58-1-3. The judge reviewing the affidavit did not receive this information. On the contrary, the reviewing judge would have assumed the officers arrested Gaines.

Second, the affidavit suggests that Officer Gassaway "knows from past experience that Damper is an associate gang member." Ex. 2. However, the testimony in the transcript shows, once again, that Officer Gassaway obtained this information from a call, during his stop of Gaines, to the FBI database. He had no prior knowledge that Damper was a gang member.

Third, the affidavit states "Officer Gassaway attempted to stop a vehicle that Damper was riding in once it left 4719 N. 29th Street. The vehicle fled. . . ." Previous to the incident in this case, Officer Gassaway was involved in two events. The first involved him pulling over a car wherein Damper could have been a passenger, although Gassaway never asked for the passenger's identification. The driver received a warning ticket for a missing taillight. The second incident involved a time when a vehicle left 4719 N. 29th Street, and Officer Gassaway attempted to follow and stop the vehicle. He was unable to do so, as his vehicle became stuck in a snow embankment. When the officers pulled Gaines over for the stop that is related to this case, Gaines allegedly told the police officers that Damper had been the one in that vehicle that Officer Gassaway had previously tried to pursue and that Damper had cocaine in that vehicle. Officer Gassaway had no personal or independent knowledge as to who was driving or who was in the vehicle until Gaines told him. Again, the language in the affidavit would lead the reader to believe that Officer Gassaway had independent knowledge that Damper was in the car that eluded police prior to the incident in this case.

Fourth, it is clear that the officers struck a deal with Gaines, asking for his cooperation and in return promising no charges would be filed. Defendants failed to include such information in the affidavit. Given the fact that nearly the entire basis for the search warrant rested on the representations of Gaines, it would seem reasonable that the officers should have included this information for the judge's decision. Such information clearly goes to credibility, particularly where there is very little corroborating evidence.

These inaccuracies and omissions, when taken in total, are very troubling to the court. I find that the omissions and inaccuracies were made with reckless disregard of the truth and that they were crucial to a finding of probable cause to issue the search warrant. After reviewing the affidavit, I conclude that there is insufficient probable cause to support the warrant once the omissions and inaccuracies are taken into account. These omissions and inaccuracies are material and were relied on by the judge who issued the search warrant. Consequently, I find that the search warrant should not have been issued. The search warrant is suppressed and all evidence gathered pursuant to the search warrant is likewise suppressed.

THEREFORE, IT IS ORDERED THAT:

1. Defendant's motion to suppress, Filing No. 15, is granted;

2. Defendant's objections, Filing No. 43, to the magistrate's reports and recommendations, Filing Nos. 39 and 40, are sustained.