IKUTA, Circuit Judge,
dissenting:
In All the President’s Men, Deep Throat famously advised two investigative journalists that in order to find the truth, they had to “follow the money.” In United States v. Gourde, we endorsed this maxim, holding that payment of subscription fees to a site on which child pornography is available was sufficient to support probable cause for a search warrant. 440 F.3d 1065, 1071 (9th Cir.2006) (en banc). Despite the fact that this case involved a direct connection between the Chisms’ credit card and two websites populated with child pornography, the majority holds that the evidence was insufficient to support probable cause, and therefore the district court erred in granting summary judgment to the police on the basis of qualified immunity. In doing so, the majority tramples on controlling precedent and defies common sense. I respectfully dissent.
*394 I
The Washington State Police received a hot “cybertip” about child pornography on two Yahoobhosted websites. Yahoo! lets users create their own websites (with unique domain names) and host their own content on those websites, including populating the websites with images. Yahoo! may also provide users with domain-based email accounts.
The first tip directed the police to a website with the URL http://foelonipwincmezixecvom.us (referred to here as the “foel” website). According to the tip, 14 images of child pornography had been uploaded to this website. The tip identified the “screen user name” for the web site as “qek9pj8z9ec” and the email associated with this website as “qek9pj8z9ec@yahoo. com ” (referred to here as the “qek” user name and email). Yahool’s subscriber information for the website identified the subscriber as “Nicole Chism,” with the Chisms’ address and phone number, and the qek email address. The user’s log-in name was “qek,” with the full name given as “Mr. Nicole Chism,” and the country identified as “Chile.” The Yahoo! Billing History showed that the Chisms’ credit card had paid for two months of web hosting fees for the site.
The second tip identified a website with the URL http://qemtudawyownufiseip.com (referred to here as the “qem” website). According to the tip, 63 images of child pornography had been uploaded to this website. The tip identified the email associated with this website as “qaagwcyl9 ab@yahoo.com” and the user name as “qaagwcyl9ab” (referred to here as the “qaag” email and user name). Yahoo! did not provide subscriber information, but according to Yahoo!, the user’s full name was “Mr. Nicole Chism,” the log-in name was “qaag,” and the country was identified as “Bolivia.” The Yahoo! Login Tracker showed that “qaag” had logged into the website three times, once from the same IP address used by “qek.”
The police followed up with Bank of America, which had issued the credit card that paid for these child pornography sites. According to the bank, the Chisms had not reported any fraudulent activity on their card. Reviewing the card’s billing records, the police confirmed that the Chisms’ credit card was used pay for the foel website for two months and the qem website for a month.
Based on this investigation, the police could reasonably conclude that a person using the name Chism, providing the Chisms’ home address and phone number, and paying with the Chisms’ credit card, had created two websites, populated them with child pornography, and logged on to the sites several times. Does this create a “fair probability,” Illinois v. Gates, 462 U.S. 213, 246, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), that child pornography would be found on the Chisms’ computer? Did the magistrate judge correctly answer the “commonsense, practical question” that there was probable cause to believe that evidence of child pornography was located at the Chisms’ residence? Id. at 230, 103 S.Ct. 2317. These questions answer themselves: it is reasonable to “follow the money” from the child pornography website, to the fees paying to host that website, to a credit card owned by the Chisms, to the address for the payee (which is the same address as the website’s subscriber), and from there to the Chisms’ computer. And if there was any doubt, Gourde requires us to hold that there was probable cause supporting the warrant, as explained below. Therefore, the district court did not err in rejecting the Chisms’ claim that their Fourth Amendment rights were violated and granting summary judgment in favor of the police.
*395 II
Our en banc decision in United States v. Gourde is directly on point and controls our probable cause analysis here.
In Gourde, the police investigated a website that featured child pornography (called “Lolitagurls.com”) and obtained a membership list. 440 F.3d at 1067. The list included the name Micah Gourde, and provided Gourde’s name, home address, date of birth, and email address. Id. at 1068. According to the membership list, Gourde’s credit card had been used to pay a fee of $19.95 a month for unlimited access to the website and its images for over two months, until the FBI shut down the site. Id. at 1067-68.
We concluded, based on the evidence that Gourde’s credit card had been used to pay subscription fees to a site that contained child pornography, that there was a “fair probability” that “Gourde’s computer contained evidence that he violated” federal child pornography laws. Id. at 1069.
First, we inferred that Gourde “had access and wanted access to [] illegal images.” Id. at 1070. We based this inference on evidence that Gourde had been a paying member of a website containing images of child pornography. Because his credit card had been used to pay for access to the website, and Gourde could not have paid two months of subscription fees “by accident or by a mere click of a button,” id., we reasoned that Gourde had knowingly and willingly paid for unlimited access to illegal images, see id. at 1070-71.
Given this conclusion, we made the further inference that there was “near certainty that his computer would contain evidence of a crime had he received or downloaded images” in violation of federal law. Id. at 1071. As we explained, “[i]t neither strains logic nor defies common sense to conclude, based on the totality of these circumstances, that someone who paid for access for two months to a website that actually purveyed child pornography probably had viewed or downloaded such images onto his computer.” Id.
Based on this “triad of solid facts,” namely that: (1) “the site had illegal images,” (2) the inference that Gourde intended to have and wanted access to these images; and (3) our further inference that “these images were almost certainly retrievable from his computer if he had ever received or downloaded them,” we determined that “the reasonable inference that Gourde had received or downloaded images easily meets the ‘fair probability’ test.” Id. “Employing the principles of Gaies-praeticality, common sense, a fluid and nontechnical conception of probable cause, and deference to the magistrate’s determination,” we concluded that the search warrant was supported by probable cause. Id.
In reaching this conclusion, we rejected Gourde’s argument that the police should have looked for evidence of Gourde’s downloads in the computer hosting the child pornography website, and his claim that “absent such concrete evidence, the profile data and other facts are insufficient to support a warrant.” Id. at 1072. We disagreed that the police had any obligation to conduct such additional investigation or obtain any additional evidence: Gourde asserted that the police did not need to turn a “fair probability” into a “near certainty.” Id. at 1073.
Gourde is directly applicable and controls the outcome of this case. The same “triad of solid facts” found in Gourde are present here: (1) the foel and qem websites contained images of child pornography, (2) the Chisms’ credit card paid to host both sites, raising the inference that the Chisms intended to have and wanted access to these images, and therefore (3) *396 images of child pornography “were almost certainly retrievable from [the Chisms’] computer if [the Chisms] had ever received or downloaded them.” Id. at 1071. Like the defendant in Gourde, the Chisms could not have paid two months of hosting fees for the sites “by accident or by a mere click of a button,” id. at 1070, and the inference that the Chisms’ computer contained child pornography was eminently reasonable given that they paid multimonth fees to host a child pornography website, see id. at 1071. Under Gourde, these two facts raise the additional inference that images of child pornography were retrievable from the Chisms’ computer had they “ever received or downloaded them.” Id. at 1071. Indeed, this additional inference is even stronger here than it was in Gourde, because there was evidence that the user names associated with a “Mr. Nicole Chism” were used to log in to both the foel and qem websites.[1]
Under any reasonable reading, Gourde dictates that the link between the Chisms’ credit card and the websites containing child pornography, coupled with the multimonth charges, the repeated log-ins, and the lack of any billing challenge from the Chisms, is necessarily sufficient to establish probable cause. Even viewing the record in the light most favorable to the Chisms, the police had probable cause to search the Chisms’ residence irrespective of any alleged misrepresentations or omissions in the affidavits submitted to obtain the search and arrest warrants. The Chisms therefore suffered no Fourth Amendment violation, and their § 1983 claim for judicial deception must fail as a matter of law.
Ill
In supporting its contrary conclusion, the majority relies on both omissions and alleged false statements in the affidavit, Maj. Op. at 386-87, but places the most weight on alleged misrepresentations that are clearly immaterial. Indeed, their immateriality is amply evidenced by the fact that the Chisms failed to even mention the alleged misrepresentations until this appeal. Before the district court, the Chisms alleged only that the affidavit contained material omissions. Now, for the first time on appeal, the Chisms raise the claim that the affidavits contained recklessly made false statements. Even assuming the latter claim is appropriately before us, cf. Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 515 (9th Cir.1992), it is baseless in any event.
To be clear, the Chisms have been able to dig up only two alleged false statements in the police officers’ affidavit. First, the affidavit notes the credit card number used to pay for the foel website, and states: “This is the [credit] card the suspect used to purchase the images of child pornography from the website ‘[foel].’ ” Although the majority places much weight on the fact that the credit card “was not used to buy images of child pornography,” Maj. *397 Op. at 387, this error in the affidavit is immaterial, given that the Chisms’ • credit card was used to buy the website itself, that is, to pay hosting fees for a website populated with child pornography. While the affidavit’s misstatement may evince carelessness, or a lack of precision, it does not establish a deliberate or reckless disregard for truth.
Second, the affidavit states, “Based on the information received from NCMEC about the images downloaded by Todd M. Chism, it is likely to believe he was using internet services at his residence and/or business office.” Again, the majority makes much of the fact that there was no evidence that Todd Chism had downloaded images of child pornography. But any error is again immaterial. The evidence establishes that someone controlling the foel website uploaded child pornography to the website, and uploading images of child pornography raises exactly the same inferences as downloading such images. Moreover, Gourde instructs that we can infer that a person who pays for access to images of child pornography has downloaded them. 440 F.3d at 1071. Again, the affidavit’s use of the word “download” instead of “upload” cannot be the basis of a judicial deception claim.
The majority places less weight on the alleged omissions in the affidavit, and for good reason: they are either immaterial, or not really omissions at all. First, the majority points to the affidavit’s failure to state that the IP addresses used to register the foel and qem websites were traced to Cheryl Corn and Vitina Pleasant. Maj. Op. at 384, 387. This carries little weight, given that the credit card used to pay the hosting fees for the sites and the user-names used to log in to both sites were registered to the name “Chism.” Moreover, given the existence of proxy software, which allows an unknown individual to log on to the internet under another person’s IP address, the lack of a match between the IP addresses used for registration and the Chisms’ IP address has no probative value. See, e.g., United States v. Vosburgh, 602 F.3d 512, 527 n. 14 (3d Cir.2010) (recognizing that “proxy servers can be used to mask IP addresses”); Tagged, Inc. v. Does 1 through 10, 2010 WL 370331, at *2 (N.D.Cal. Jan. 25, 2010) (finding IP address information unreliable where pattern of IP addresses indicated the use of a proxy server). In other words, while a match between an IP address associated with pornographic images and the IP address of a defendant’s computer increases probable cause that the defendant is involved in a crime, as the majority argues, Maj. Op. at 390-91, no case has relied on the reverse proposition (that the lack of a match between an IP address associated with such images and the IP address of the defendant’s computer reduces probable cause of the defendant’s involvement). Indeed, in this case, the FBI determined that proxy software had been installed on Cheryl Corn’s computer, allowing an unknown individual to log onto the internet under her IP address. Thus the absence of information in the affidavit about the IP addresses used to register the foel and qem sites was immaterial.
Second, Agent Gardner’s failure to disclose the fact that the police never traced the IP address that was used to log in to both the foel and qem websites, Maj. Op. at 384, 387, cannot be deemed an omission: as in Gourde, the police have no obligation to turn a “fair probability” into a “near certainty” by conducting such an additional investigation. 440 F.3d at 1071. As Gourde explained, “[a]n affidavit may support probable cause even if the government fails to obtain potentially dispositive information,” id. at 1073 n. 5.[2]
*398 Third, the majority’s reliance on the omission of the information that Nicole and Todd Chism both used the credit card that paid the hosting fees, Maj. Op. at 386-87, is baffling. Surely the failure to inform the magistrate judge that husbands and wives often use the same credit card cannot be deemed a material omission. At a minimum, this revelation would not have changed the “fair probability” that child pornography would be found at the Chisms’ residence.
In fact, no weight can be placed on any of the alleged misrepresentations and omissions given the ample evidence to support probable cause, and thus they cannot be used to support a judicial deception claim. It is well established that “[o]missions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause.” United States v. Smith, 588 F.2d 737, 740 (9th Cir.1978). Here, even if the affidavit was corrected per the Chisms’ claimed omissions and misrepresentations, it was not “so lacking in indicia of probable cause as to render official belief in its existence unreasonable.” Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
Finally, the majority errs in its determination that the affidavit failed to establish probable cause because the police did not establish “a physical link between the illegal images and the locations to be searched.” See Maj. Op. at 391. The majority’s ruling is directly contrary to the Supreme Court’s decision in Gates, which held that a determination of probable cause must be based on the totality of the circumstances, not on the presence or omission of specific items of evidence. 462 U.S. at 230-31, 103 S.Ct. 2317; see also United States v. Martinez-Garcia, 397 F.3d 1205, 1217 (9th Cir.2005). And it is directly contrary to Gourde, which rejected the necessity for the sort of evidence (e.g., an IP address association or physical link) that the majority suggests is required. There was no need, Gourde tells us, for the police to develop any evidence that Gourde had ever received or downloaded images, let alone evidence of downloads traced to his IP address. See 440 F.3d at 1072-73. Given the government’s evidence that phony IP addresses abound in cyberspace, the majority’s “physical link” rule will baffle many an investigation into child pornography and its users and peddlers.
IV
While it turns out that the Chisms were not responsible for the child pornography websites under investigation by the police, ample evidence pointed to the conclusion that they were. The evidence established more than a fair probability that child pornography would be found on computers at the Chisms’ residence; indeed, Gourde compels the conclusion that the police had probable cause for the search.[3] Therefore, there was no constitutional violation, and the district court did not err in granting *399 summary judgment to the police on the basis of qualified immunity. In concluding that evidence leading to suspects who are paying to host their own child pornography websites does not create a “fair probability” that child pornography will be found on the suspects’ computer, the majority turns its back on Deep Throat’s adage, our case law, and the Supreme Court’s probable cause jurisprudence. I dissent.

. The majority’s attempt to distinguish Gourde is unavailing. See Maj. Op. at 391 n. 13. In Gourde, the FBI used subscription information provided by Lancelot Security to link membership in the Lolitagurls.com website to Gourde and his home address in Castle Rock, Washington. 440 F.3d at 1070-71. Here, the police used subscription information provided by Yahoo! and credit card information provided by Bank of America to link the user accounts for the foel and qem websites to the Chisms and their home address in Nine Mile Falls, Washington. The information is effectively identical. In addition, the majority’s attempted distinction of Gourde on the ground that none of the evidence in that case raised "the specter of identity theft” is peculiar, given the majority’s correct statement that here the police had no reason to know of any reported credit card fraud. Maj. Op. at 385 n. 7.

. The majority’s argument that the lack of a match between the IP address used to register the foel and qem websites is a material omission and reduces probable cause because it means that "one additional inference is necessary to conclude that evidence of a crime will be found at the location to be searched,” Maj. Op. at 391 n. 14, likewise runs afoul of Gourde's admonition that the government need not "obtain potentially dispositive information.” 440 F.3d at 1073 n. 5.

. Though the arrest warrant is a closer question, the evidence also supported probable cause to arrest either Todd or Nicole Chism. See Smith v. Almada, 640 F.3d 931, 937 (9th Cir.2011).